Dear Mr. Hopson:
The Undersecretary of Department of Public Safety Corrections (DPS C) has the authority to oversee the management of the budget of the Liquefied Petroleum Gas Commission (LPGC), to interpret, approve, or disapprove of LPGC contracts, and to provide budgetary restrictions on the LPGC in the area of personnel management. The LPGC has the authority to write rules and regulations relating to the liquefied petroleum gas/anhydrous ammonia industries, enforce such rules and regulations, manage personnel in support of those functions subject to the budgetary restraints of DPS C, and to enter into media/advertising contracts for the advancement of liquefied petroleum gas use and safety subject to the approval of the DPS C Undersecretary. You have requested an opinion from this Office regarding the powers and authority of the Undersecretary of the Department of Public Safety and Corrections (DPS C) as it relates to his/her authority over the Liquefied Petroleum Gas Commission (LPGC). Based upon the opinion request and subsequent telephone conversations with Charles Fuller, Director of Liquefied Petroleum Gas Commission, we have identified the general problems that have prompted this request. The issues presented by your request are:
 1. What are the powers and authority of the Undersecretary of DPS C in terms of contracting, personnel decisions, and budgeting? What are the powers of the LPGC in terms of contracting, personnel decisions, and budgeting?
 2. Once the LPGC has entered into a contract, (i.e. approved by the LPGC, the DPS C Undersecretary, the Office of Contractual Review, and the Department of State Civil Services) does the DPS C Undersecretary have the authority to dispute the terms of the contract? In other words, can the DPS C Undersecretary deny payment of an invoice based on an ambiguity or dispute in the interpretation of certain terms in the contract?
 3. Does the DPS C Undersecretary have the final authority to approve or disapprove any contract that has been authorized by the LPGC? *Page 2 
Facts
The issues this opinion seeks to resolve stem from various disputes between the LPGC and the Undersecretary of the DPS C. The LPGC believes that the Undersecretary is unnecessarily disputing its actions and decisions surrounding certain contracts and personnel matters.
The current situation involves two contracts between the LPGC and a media/advertising company named Creative Communications, Inc. The first of these contracts began in July 2005 and was to continue until June 2008. This contract was being performed by both parties until sometime around November of 2007. At that time the Undersecretary for DPS C began questioning the terms and conditions of the contract and challenged the invoices. The challenge between the LPGC and the Undersecretary concerned the commissions to be paid to Creative Communications, Inc. The LPGC, through its Director, authored the contract and believes that the intent and the language of the contract supports the position that the commission paid to Creative Communications, Inc., is to be based on gross expenses, whereas the Undersecretary believes that the commission to Creative Communications, Inc., is to be paid based on net expenses. This opinion does not resolve the dispute surrounding the commission to be paid. Such a resolution would be substantially fact-based and would thus be properly before a court of competent jurisdiction.[1] This opinion addresses the legal question of who has the authority to interpret and resolve ambiguities relating to LPGC contracts.
The second contract with Creative Communications, Inc. was to begin in July 2008. The LPGC has approved and signed the 2008 contract. In the 2008 contract, LPGC attempted to clarify the issues surrounding the commission to be paid to Creative Communications, Inc. The Undersecretary again challenged the terms of the agreement and delayed the approval of the contract. The LPGC believes that the Undersecretary's actions interfere with its ability to conduct business and perform on this contract — a contract that the LPGC has statutory authorization to execute. As to this question, this opinion addresses the authority of the Undersecretary of DPS C to approve or disapprove of a contract that has been agreed to by the LPGC.
In addition to the contract issues, the LPGC requested an explanation of its authority to make personnel decisions. The opinion request lacked sufficient facts for this Office to make a specific determination surrounding any one *Page 3 
particular incident. Therefore, this opinion generally addresses what powers and authority the LPGC has pertaining to its personnel management.
Law Governing the Respective Powers of the DPS C Undersecretary andLPGC:
The Liquefied Petroleum Gas Commission was transferred to the Department of Public Safety and Corrections after the implementation of the 1974 Louisiana Constitution. Louisiana Revised Statute 36:409(H) provides:
 The Liquefied Petroleum Gas Commission (Article VI, Section 28 of the 1921 Louisiana Constitution made statutory by Article XIV, Section 16(A)(3) of the 1974 Louisiana Constitution; R.S. 40:1841-40:1850; R.S. 3:1351-3:1357) is placed within the Department of Public Safety and Corrections and shall exercise and perform its powers, duties, functions, and responsibilities in the manner provided for agencies transferred in accordance with the provisions of R.S. 36:802, except that any director or assistant director of the agency or similar personnel authorized by law shall continue to be appointed as otherwise provided by law.
The "Transfers with Certain Functions Retained" statute discusses the powers and duties of an agency/commission, the Secretary, and Undersecretary within the Department of Public Safety and Corrections. La.R.S. 36:802 discusses the effects of transfer:
 The agencies transferred [. . .] shall continue to be composed and selected as provided by law, and each shall continue to exercise all of the powers, duties, functions, and responsibilities provided or authorized for each by the constitution or laws which are in the nature of policymaking, rulemaking, licensing, regulation, enforcement, or adjudication and also shall continue to exercise all advisory powers, duties, functions, and responsibilities provided by law. Such powers, duties, functions, and responsibilities shall be exercised independently of the secretary and any assistant secretary, except that:
 (1)(a) The secretary of the department to which each is transferred shall exercise all powers, duties, functions, and responsibilities necessary for the administration and implementation of the policies, rules, and decisions of the agencies so transferred, including the employing, appointing, removing, and promoting of necessary personnel. *Page 4 
 (2) The undersecretary of the department to which each is transferred shall, under the supervision and control of the secretary, perform and administer those functions of each which he is required to perform and administer to the extent provided for each by this Title.
In this section of the statute, the Secretary is authorized to enforce the decisions of the LPGC as it pertains to enforcement and setting the rules and regulations for the industry, while the Undersecretary maintains the authority and oversight of accounting, budget, contract management and personnel management. Louisiana Revised Statutes 36:3(7) provides the definition for "Undersecretary". "Undersecretary" means the officer designated to direct and be responsible for the functions of the office of management and finance of certain departments. Further, La.R.S. 36:406 establishes the role of the "Undersecretary" within DPS C. La.R.S. 36:406 (emphasis added) states (in pertinent part):
 B. (1) The undersecretary for public safety and services shall direct and be responsible for the functions of the office of management and finance for public safety services within the Department of Public Safety and Corrections. In such capacity, he shall beresponsible for accounting and budget control,procurement and contract management, data processing other than data processing authorized by law to be performed by the office of state police, management and analysis, personnel management, grants management for public safety services and all of its offices, and for all agencies transferred to the Department of Public Safety and Corrections which are related to the functions of public safety services, except as otherwise specifically provided in this Title.
It is clear from the statute that the Undersecretary has the responsibility for overseeing the financial undertakings within DPS 
C. This would include overseeing contracts entered into by the LPGC.
While the Undersecretary has the responsibility for accounting and budget control, the question remains: what are the powers of the LPGC under the Louisiana Revised Statutes? The LPGC's powers are listed in La.R.S. 40:1841-40:1850 and La.R.S. 3:1351-3:1357. The relevant portions that designate the LPGC's authority are listed below:
 The commission has the power to make and enforce reasonable rules and regulations governing the storage, sale and transportation of liquefied petroleum gases over the highways of the state, the installation of tanks or systems for the use of liquefied petroleum gases, and the installation and use of liquefied petroleum *Page 5 
gas appliances as the commission may deem necessary in the interest of public safety.
La.R.S. 40:1846(A) (emphasis added).
 The Liquefied Petroleum Gas Commission is vested with the authority to promulgate rules and regulations governing the storage, utilization, sale or transportation of anhydrous ammonia, the fabrication and installation of systems for storage and utilization of anhydrous ammonia, and installation of all other anhydrous ammonia equipment as the commission may deem necessary in the interest of public safety.
 The Liquefied Petroleum Gas Commission is vested with the duty of administering and enforcing the provisions of this Part and the rules and regulations adopted by the commission, to employ all necessary personnel or inspectors to enforce this law and rules and regulations adopted by the commission, and such inspectors shall have the authority to enter the premises of all manufacturers of anhydrous ammonia equipment, and farmers for inspection purposes from time to time as the commission deems necessary or advisable in enforcing the provisions of this law and the rules and regulations of the commission.
La.R.S. 3:1354(A) (B). The above-quoted statutes show that the LPGC has limited express authority to perform duties other than those surrounding the creation of rules and regulations related to liquefied petroleum gas, as well as the enforcement of the rules and regulations.
Authority of the LPGC to Contract for Market Development and Promotion
The LPGC is authorized by statute to use certain monies for market development and promotion. Specifically, La.R.S. 40:1851 authorizes an assessment on permit holders and that assessment is to be used for the "market development and promotion of the use of liquefied petroleum gas" and La.R.S. 1851.1(B) directs how the monies are to be spent. It is our opinion that these statutes clearly show that LPGC was authorized to create the contract for media services with Creative Communications, Inc.
Powers of the Undersecretary to Interpret Terms in Current a Contract
From discussions with the Director of the LPGC, it is this Office's understanding that one of the issues that is part of your request is the question of whether the Undersecretary can refuse to pay on the 2005 Creative Communications, Inc., contract that was agreed to and approved by the LPGC, the DPS C *Page 6 
Undersecretary, the Office of Contractual Review, and the Department of State Civil Service. While it is the opinion of this Office that the DPS C Undersecretary does have the authority to approve, disapprove, and manage contracts of the LPGC, it seems contrary to basic contract law for a contract that was originally approved by the DPS C Undersecretary to now be the subject of refused invoices. If the terms of the contract are unambiguous and were approved by all of the above-noted parties, then general contract law would suggest that the Undersecretary should not interfere with the performance of that contract. Unreasonable and unnecessary interference by the Undersecretary on the performance of these contracts could place the DPS C at risk for contractual damage claims. However, due to statutory constraints not typically present in basic contracts law, we do not find this to be the case in this matter.
Nonetheless, should a dispute arise under a current contract, the DPS C Undersecretary has the final authority over the LPGC on budget, accounting, and contract management. The Undersecretary is charged with the supervision and management of contracts within DPS C. Given the Undersecretary's powers in La.R.S. 36:406(B)(1), the Undersecretary has the authority to dispute the payment of a contract.
Currently, in dealing with the July 2005 contract, the DPS C Undersecretary is delaying payment of invoices because the Undersecretary believes that the commission to be paid to Creative Communications, Inc., should be paid on net expenses, whereas it is our understanding from communications with the LPGC Director that the contract, up until around November of 2007, was being paid on gross expenses. The LPGC maintains that the intent of the 2005 contract was that the commission to Creative Communications, Inc., was to be paid based on gross expenses. This dispute regarding the meaning of the payment terms of the contract brings about the issue of whether the Undersecretary has the authority to now alter or question the terms of the contract.
Louisiana Revised Statute 36:403(B)(1) supports the authority of the Undersecretary of DPS C to control the accounting, budget control, procurement and contract management. La.R.S. 36:406(B)(1) is not ambiguous and is not open to interpretation in terms of the Undersecretary's duties. Therefore, the Undersecretary does have the authority to question the terms of the contract and delay the payment of the invoices until all disputes are resolved. Ultimately, the Undersecretary is the person that is responsible for the budget and contracts of the Department of Public Safety and Corrections. The Undersecretary would have to answer for payment of the contract when there are questionable payments under the contract. It is therefore, the opinion of this Office that the DPS C Undersecretary can interpret, question, delay, investigate, overturn, or deny a contract as long as the justification for those actions stems from the Undersecretary's authority listed in La.R.S. 36:406(B)(1). *Page 7 
Powers of the DPS C Undersecretary to Dispute or Disapprove aContract that has been Approved by the LPGC for Future Services
In addressing the dispute between the LPGC and the DPS C Undersecretary over the 2008 Creative Communications, Inc., contract it is important to point out a distinction between this contract and the 2005 Creative Communications, Inc., contract. The main distinction is that the dispute over the 2008 contract surrounds the Undersecretary's authority to approve or disapprove of a contract that was entered into by the LPGC but performance of the contract has not yet begun; whereas the dispute over the 2005 contract was whether the DPS C Undersecretary had the authority to interpret or dispute an ambiguous payment plan on a contract in which performance was already underway.
As mentioned above, the LPGC, in the 2008 Creative Communications, Inc., contract, made an effort to clarify the payment of commissions to Creative Communications, Inc. The LPGC attempted to avoid the problems that arose surrounding the 2005 contract. Believing that the commission issues had been resolved, the LPGC signed the 2008 contract with Creative Communications, Inc. The contract was also signed by Creative Communications, Inc. The contract is now pending a review by the DPS C Undersecretary. The LPGC believes that this is an interference with its statutorily-provided authority to make a contract "for market development and promotion of the use of liquefied petroleum gas." La.R.S. 40:1851.
While La.R.S. 40:1851(E) allows the LPGC to use monies for market development and promotion of the uses of liquefied petroleum gas, it is the opinion of our Office that the DPS C Undersecretary has final approval and disapproval over contracts within DPS C. This conclusion is supported by La.R.S. 36:406(B)(1) which clearly provides that the Undersecretary shall direct and be responsible for "accounting, budget control, procurement and contract management." Therefore, any contract undertaken within DPS C, including those entered into by the LPGC, must be approved by the DPS C Undersecretary.
The LPGC's Authority over Enforcement Staff and Enforcement SupportStaff
The final portion of your opinion request seeks guidance on the LPGC's authority over its own staffing decisions. Louisiana Revised Statute40:1845 grants the Director of the LPGC the authority to hire and manage employees necessary for the enforcement of the LPGC's rules and regulations. Specifically, La.R.S. 40:1845 states:
 For the enforcement of its rules and regulations and the provisions of this Part, the commission shall appoint a director and such other *Page 8 
field inspectors as its work may require, and shall prescribe their duties and fix their compensation. It may appoint such secretarial, stenographic and clerical help as may be required to carry out the duties of the commission and shall fix their salaries.
The Director of the LPGC is thus allowed control over the personnel decisions related to enforcement staff and enforcement support staff. However, La.R.S. 36:406(B)(1) allows DPS C budgetary oversight of personnel management in general. Louisiana Revised Statute 36:406(b)(1) states (in pertinent part),
 [t]he undersecretary for public safety and services shall direct and be responsible for the functions of the office of management and finance . . . [i]n such capacity, he shall be responsible for accounting and budget control . . . personnel management.
This Office reads these provisions to mean that the Director of the LPGC has the authority to make all personnel decisions related to enforcement staff and the enforcement support staff subject to the budgetary controls of the DPS C Undersecretary. In other words, it is the opinion of this Office that the DPS C Undersecretary cannot interfere with the personnel decisions of the LPGC provided that the LPGC is operating within the budget approved and provided by the DPS C.
Conclusion
In parsing though the various statutes it is clear that the Undersecretary of Department of Public Safety Corrections (DPS C) has the authority to oversee the management of the budget of the Liquefied Petroleum Gas Commission (LPGC), to interpret, approve, or disapprove of LPGC contracts, and to provide budgetary restrictions on the LPGC in the area of personnel management. The LPGC has the authority to write rules and regulations relating to the liquefied petroleum gas/anhydrous ammonia industries, enforce such rules and regulations, manage personnel in support of those functions subject to the budgetary restraints of DPS C, and to enter into media/advertising contracts for the advancement of liquefied petroleum gas use and safety subject to the approval of the DPS C Undersecretary.
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office. *Page 9 
 Sincerely yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By: __________________________ JACKSON D. LOGAN, III Assistant Attorney General
 JDC/JDL, III/ard
[1] La.R.S. 49:251 (A) states that "the attorney general shall give his opinion in writing upon all questions of law" to elected and appointed state officers as required by statute. It is the policy of this office that we will not seek out the facts or infer the questions from the opinion request. The Attorney General will not furnish opinions on questions of fact; nor will the Attorney General issue an opinion on questions scheduled for determination by the courts, or where the prospect of litigation appears imminent. See La. Op. Atty. Gen. 07-0111.